UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JESSE JAMES SWEENEY,

        Petitioner,               Case No. 1:19-cv-503

v.                                           Honorable Gordon J. Quist

GREGORY SKIPPER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jesse James Sweeney is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan.  On October 2, 2015, following a five-day trial, a Barry County Circuit Court jury convicted Petitioner of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and domestic violence, second-offense, in violation of Mich. Comp. Laws § 750.81(4).  On November 5, 2015, the court sentenced him as a second habitual offender, Mich. Comp. Laws § 769.10, to a prison term of 15 to 40 years for CSC-I and 366 days for domestic violence.

On June 21, 2019, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

    I.        Petitioner Sweeney was denied his constitutional right under the Sixth Amendment to confront the prosecution's witness concerning her motive and bias in the case.

    II.       Double Jeopardy.

(Pet., ECF No. 1, PageID.6-7.) Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

**I.    Factual allegations**

The Michigan Court of Appeals set out the underlying facts as follows:

> On the night of October 31, 2014, and in the early morning of November 1, 2014, Sweeney and the complainant were dating, had a child together, and lived together. That night, the couple went to bed, fell asleep, and later awoke in the early morning hours of November 1. Both testified that Sweeney wanted to have sex, Sweeney hit the complainant, and then the couple had sex.
>
> The couple disagreed on the number of times Sweeney hit the complainant and whether the sex was consensual. The complainant testified that Sweeney punched her about 20 times in the face, while Sweeney testified that he only hit her twice. The complainant did not describe the sex as consensual. She testified that she knew that Sweeney was going to rape her, but she did not want to get pregnant, so she threw a condom at Sweeney. Sweeney testified that he apologized and believed that the complainant wanted to have sex with him.
>
> The prosecutor charged Sweeney with aggravated domestic violence, MCL 750.81a(3), and CSC I, and the case proceeded to a jury trial. The trial court declared a mistrial in light of comments defense counsel made in opening statements, and the case proceeded to a second trial. Ultimately, the jury convicted Sweeney of the lesser included charge of domestic violence, second offense, and CSC I.

*People v. Sweeney*, No. 330662, 2017 WL 2562562, at *1 (Mich. Ct. App. June 13, 2017). The comments Petitioner's counsel made in opening argument that prompted the trial court to declare a mistrial were as follows:

> When this is done, you're gonna reach some conclusions. I think one of 'em you're gonna reach is that the prosecutor overcharged this. I think you're gonna reach the conclusion that's because in part [the complainant] is close friends with the prosecutor's daughter.

2

*Id*. at *2. During a hearing prior to the second trial, the court refused to permit petitioner to explore the issue of the prosecutor's daughter's relationship with the victim during cross-examination of the victim. (Mot. Hr'g Tr., ECF No. 7-8, PageID.263-266.)

The jurors heard testimony from the victim, nine witnesses who were either officers or lab personnel from the Michigan state police, two of the victim's friends, two of Petitioner's prior girlfriends, one expert (a YWCA counselor), and Petitioner's daughter. Petitioner also testified. The defense presented the argument that the victim never even considered the incident to be rape until one of Petitioner's former girlfriends convinced her to make that claim.

The defense did not, however, argue that the victim was swayed to describe the incident as rape by the prosecutor's daughter. Indeed, there is no evidence in the record that the prosecutor's daughter even spoke to the victim before the prosecution commenced. Defense counsel's argument appeared to be premised entirely on supposition following from the fact that the prosecutor's daughter and the victim went to school together, knew each other, and the prosecutor's daughter was present in the courtroom during some of the proceedings.

The event as described by the victim and the event as described by Petitioner were not dissimilar. The two most significant differences related to the severity of the beating and the relationship between the beating and the subsequent sexual intercourse. The victim acknowledged that she did not directly oppose the post-beating sex because she was afraid of being beaten again. Petitioner, on the other hand testified that the beating occurred and then, later, they had consensual sex. The jury apparently found the victim's description of the event more compelling than Petitioner's. The jurors deliberated for about two hours before returning their verdicts.

Petitioner, with the assistance of counsel appealed his first-degree CSC conviction and sentence, raising several issues, including the following: "The case should [have] been

3

dismissed with jeopardy where the trial court granted a mistrial over defense objections for an allegedly improper defense attempt to question the prosecutor's motives in bringing this case. Such a remark was both proper, allowed under the Confrontation Clause, and even [if] it wasn't, it could have been easily cured by a cautionary instruction." (Pet'r's Appeal Br., ECF No. 7-18, PageID.940.) In an unpublished opinion issued June 13, 2017, the Michigan Court of Appeals rejected all of Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 7-18, PageID.863-874.) Petitioner sought reconsideration; but, the court of appeals denied his motion. (Pet., ECF No. 1, PageID.5.)

Petitioner then, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues he raised in the court of appeals, including his Double Jeopardy/Confrontation Clause issue. (Pet'r's Appl. for Leave to Appeal, ECF No. 7-19, PageID.1154.) By order entered April 3, 2018, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 7-19, PageID.1151.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, he filed this habeas petition.

## II.     AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

4

proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III.    Confrontation**

Petitioner complains that he was not permitted to confront the victim regarding her friendship with the daughter of the prosecutor. Petitioner's justification for exploring that topic on cross-examination is difficult to pin down. It has shifted as he has presented his argument to different courts.

In this court, Petitioner contends he wanted to cross-examine the victim about her relationship with the prosecutor's daughter as a motive for the victim embellishing her story and a source of her bias in favor of the prosecutor:

> [Petitioner] sought to show how [the victim] 'used her relationship' with the prosecutor's daughter to 'exert influence' over how the case was charged and how it was to proceed[, i.e.,] taking a domestic violence issue and expanding it into a false rape allegation.

(Pet., ECF No. 1, PageID.15.) Petitioner expressly disclaims any notion that he was attempting to raise a prosecutorial bias issue; he claims the issue was about only the bias of the victim as a witness. (*Id.*, PageID.15-17.)

In the state appellate courts, however, Petitioner offered a completely different justification. On appeal, Petitioner very clearly justified his argument and inquiry regarding the relationship as a prosecutorial bias issue:

> The prosecutor's motives were relevant in this dispute and counsel had a good faith basis for believing that he could introduce it. The prosecuting attorney is the chief law enforcement officer of the county. It is not unreasonable for a factfinder to believe that when a case is "personal" to their leader that they should resolve doubts in favor of that side. . . . [A] rule [requiring defense counsel to file a pretrial motion to recuse the prosecutor's office instead of arguing bias at trial] would be ineffectual because the higher the level of the official who is biased, the more likely that individuals under him/her would also be tainted. It is one thing to suggest that the prosecutor's office should be replaced on this case, but what about all the police officers and other county employees who have already [been] impacted by the taint?

> \*   \*   \*

> One defense [Petitioner] is allowed to present involves the personal interest of the prosecutor, and the influence that the complainant was able to exert over the process, based on her personal relationship with the prosecutor. This defense is two-fold. On one hand, [Petitioner] has the right to be tried by a fair prosecutor; on the other, [Petitioner] has the right to cross-examine the complainant on her interest and influence in the case. . . . The prosecutor's personal relationship—namely animosity—with the accused . . . exists as a result of the friendship of the complainant and the prosecutor's daughter.

> \*   \*   \*

> It is a valid defense for [Petitioner] that he is not guilty of the criminal sexual conduct that he is charged with, and that he was only charged in that way because of the relationship. Depriving him of a valid defense denied him the constitutional right he has through the Compulsory Process Clause. Likewise, it is proper for [Petitioner] to have the opportunity to develop this defense through the cross-examination of the complainant. . . . . If [the victim] used "back channels" to encourage a prosecution to be brought, this is highly relevant.

(Pet'r's Appeal Br., ECF No. 7-18, PageID.965-966, 971-972) (footnotes omitted).[1] The Michigan Court of Appeals rejected the argument—as a prosecutorial bias issue:

---

[1] Petitioner raised the same argument in the Michigan Supreme Court. (Pet'r's Appl. for Leave to Appeal, ECF No. 7-19, PageID.1184-1186, 1189-1187.)

> If a prosecutor has a personal conflict of interest, the prosecutor assigned to the case or the entire prosecutor's office may be disqualified. *People v Mayhew*, 236 Mich App 112, 126-127; 600 NW2d 370 (1999). If a prosecutor engages in selective prosecution, a defendant can move to dismiss a charge, see *Wayte v United States*, 470 US 598, 604, 607-608; 105 S Ct 1524; 84 L Ed 2d 547 (1985), or object to binding a charge over to circuit court, *People v Barksdale*, 219 Mich App 484, 486-488; 556 NW2d 521 (1996). On appeal, Sweeney argues that prosecutor bias, resulting in overcharging, can be attacked in a third way: the prosecutor should stay on the case, defendant should be tried on the charges, and defendant can attack the charges by arguing prosecutor bias to the jury. Sweeney must support his arguments on appeal with citation to supporting authority. See MCR 7.212(C)(7). Yet, he cited no authority supporting his claim that he could present such a defense to the jury. Therefore, we cannot conclude that the trial court abused its discretion in excluding the evidence.

(Mich. Ct. App. Op., ECF No. 7-18, PageID.865.) Petitioner's counsel took some offense to the suggestion that he had not supported his argument with authority. He filed a motion for reconsideration that focused the argument even more—as a prosecutorial bias issue:

> [T]his Court misapprehends the nature of the counsel's argument. Counsel is suggesting that when the chief prosecutor has a personal interest in the case, the witnesses may shade their testimony to please their boss. Counsel is suggesting that when the Complainant is a close friend of the prosecutor the prosecutor might create a climate where law enforcement and related criminal justice participants lose their neutrality.

(Pet'r's Mot. for Reconsideration, ECF No. 7-18, PageID.1093.)

Petitioner complains that the Michigan appellate courts failed to address his "witness bias" issue. But, the truth of the matter is that he did not raise that issue in the Michigan appellate courts. Because Petitioner did not raise the issue as a "witness bias" issue in the state appellate courts, the issue has not been properly exhausted.

Before the Court may grant habeas relief, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971);

8

*Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  He cannot because he simply did not raise the "witness bias" claim in the state appellate courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issue he has presented for the first time in this application.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*

Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1).  Petitioner has not yet filed his one allotted motion.  Therefore, the Court concludes that he has at least one available state remedy.  To properly exhaust his claim, Petitioner would have to file a motion for relief from judgment in the Barry County Circuit Court.  If his motion were denied by the circuit court, Petitioner would have to appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court.  *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as

9

required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

Although the Court may not grant relief on a habeas claim that is unexhausted, the Court may deny relief on such a claim. 28 U.S.C. 2254(b)(2). Petitioner's unexhausted claim is so lacking in merit that dismissal, even absent exhaustion, is appropriate.

Petitioner contends that limiting his cross-examination of the victim to exclude questioning regarding her relationship with the prosecutor's daughter violated his rights under the Confrontation Clause of the Sixth Amendment. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). The Supreme Court long has read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). As the Supreme Court early held,

> The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242-43, *quoted in California v. Green*, 399 U.S. 149, 157-58 (1970).

While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude

insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).

"Unconstitutional limitations on cross-examination are normally subject to harmless-error analysis." *Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Van Arsdall*, 475 U.S. at 681-84). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 728 (citing *Fry v. Pliler*, 551 U.S. 112, 129 S. Ct. 2321, 2328 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. In determining whether the restriction was harmless, a court must consider a number of factors, "'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Van Arsdall*, 475 U.S. at 684).

Respondent captures the fallacy of Petitioner's witness bias argument when he notes the following:

> [Petitioner] never explains how the relationship [between the victim and the prosecutor's daughter] would give the victim any bias. His theory is that this was a case of domestic violence followed by consensual sex, and that the victim then falsely claimed the sex was non-consensual. If this were true, then the motive for

11

>the victim to lie would be the fact that [Petitioner] beat her, not the fact that her friend's mother was the Barry County Prosecuting Attorney.

(Resp.'s Answer, ECF No. 6, PageID.45.)  Indeed, it borders on nonsensical for Petitioner to suggest that the victim saw the Petitioner's beating of her followed by sex as an opportunity for the prosecutor to pad her rape conviction statistics.  Yet, that is the argument he must be making to offer any significance to the excluded line of questioning as it impacts witness bias or motivation to fabricate.

Importantly, the fact that the trial court foreclosed questioning regarding the victim's relationship with the prosecutor's daughter did not prevent Petitioner from questioning the victim regarding, and then arguing, that the victim was improperly influenced to conflate the circumstances—a beating followed by perfectly consensual sex as Petitioner described them—with first-degree criminal sexual conduct.  Defense counsel reviewed with the victim the content of her texts following the event, texts that decried the beating but did not mention non-consensual sex.  (Trial Tr. II, ECF No. 7-11, PageID.419-427.)  Counsel explored all of the opportunities the victim had to report the incident.  (*Id.*)  Defense counsel even elicited the victim's acknowledgment that she was encouraged to report the incident as rape by Petitioner's former girlfriend.  (*Id.*)  Counsel used this evidence as the foundation for closing argument that the rape allegation was an after-the-fact fabrication.  (Trial Tr. IV, ECF No. 7-13, PageID.586-588.)

Considering the *Van Arsdall* factors and the absence of any evidence that the victim's relationship with the prosecutor's daughter played any role with respect to the fact or content of the victim's reporting of the incident, there is no basis in the record to conclude that the exclusion of evidence regarding the relationship had any effect on the result, much less a substantial and injurious one.  Accordingly, even if it were wrong to prevent defense counsel's

inquiry into the relationship, the Court concludes that the error was harmless under *Brecht*. Accordingly, Petitioner is not entitled to habeas relief on his Confrontation Clause claim.

## IV. Double jeopardy

Petitioner next contends that he was denied his constitutional right to not be twice put in jeopardy for the same offense when the trial court permitted the second trial to go forward. The Michigan Court of Appeals applied the following standard when it considered Petitioner's double jeopardy claim:

> The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 15, "prohibit placing a defendant twice in jeopardy for the same offense." *People v Ackah-Essien*, 311 Mich App 13, 31; 874 NW2d 172 (2015). When a defendant has chosen to be tried by jury, jeopardy attaches when the jury is selected and sworn. *People v Mehall*, 454 Mich 1, 4; 557 NW2d 110 (1997). The defendant then has a constitutional right to have his case completed and decided by that tribunal. *People v Henry*, 248 Mich App 313, 318; 639 NW2d 285 (2001). Therefore, if the trial court declares a mistrial after jeopardy has attached, double jeopardy bars retrial if a judge or prosecutor acts in bad faith to "threaten[] the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *Arizona v Washington*, 434 US 497, 508; 98 S Ct 824; 54 L Ed 2d 717 (1978) (internal quotations, alterations, and citations omitted).
>
> Accordingly, "[t]he Double Jeopardy Clause does not bar all retrials." *People v Dawson*, 431 Mich 234, 252; 427 NW2d 886 (1988). "Neither party has a right to have his case decided by a jury which may be tainted by bias." *Washington*, 434 US at 516. Therefore, a defendant's "valued right to have the trial concluded by a particular tribunal [can be] subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id*. at 505. For example, double jeopardy will not bar retrial if the cause of the mistrial was outside the control of the prosecutor or trial judge, such as when defense counsel's misconduct warrants a mistrial. *Dawson*, 431 Mich at 252, 252 n 45. Accordingly, "the trial judge must have the power to declare a mistrial." *Washington*, 434 US at 513.
>
> If a trial court sua sponte declares a mistrial, it must find that the mistrial was manifestly necessary. *Dawson*, 431 Mich at 252. Manifest necessity warranting a mistrial can occur when "[a]n improper opening statement" biases and taints the entire jury pool, "frustrat[ing] the public interest in having a just judgment reached by an impartial tribunal." *Washington*, 434 US at 512-513. Appellate courts defer to the trial court on the proper remedy for an improper opening statement unless the trial judge acted irrationally or irresponsibly. *Id* at 514-515. The trial court is

13

>  most familiar with the case's background, the tone of the arguments made, and the reaction of the jurors to any improper argument. *Id*. at 513-514.  To facilitate appellate review, the trial court must provide "sufficient justification for the . . . ruling." *Id*. at 516-517.

(Mich. Ct. App. Op., ECF No. 864-865.)

Petitioner does not contest the propriety of the standard applied by the Michigan appellate court.  Indeed, he appears to concede that, if the issue he sought to raise was prosecutorial bias, the Michigan Court of Appeals resolution of the double jeopardy issue, applying *Arizona v. Washington*, was correct.  (Pet., ECF No. 1, PageID.17-18.)  Petitioner's entire attack on the appellate court's double jeopardy decision hinges on the premise that, in evaluating the justification for his inquiry and argument, the court considered a prosecutorial bias justification when, in fact, Petitioner put forth a witness bias justification.  (Pet'r's Reply Br., ECF No. 8, PageID.1363) ("Therefore, because the factual basis for Sweeney's motion to dismiss was misconstrued, the state courts['] decisions to deny his motion and appeal of this issue [were] unreasonable.")

For the reasons set forth above, the appellate court's conclusion that Petitioner sought to justify on appeal his inquiry and argument by claiming prosecutorial bias is not only a reasonable determination based on the record, it is the only reasonable interpretation based on the record.  On appeal, there is no hint that Petitioner sought to justify his inquiry into the prosecutor's daughter's relationship with the victim with the assertion that the inquiry demonstrated the victim's bias and motive to lie.  At best, Petitioner's appellate argument can be read as suggesting witness bias in the law enforcement officers' testimony because they perceived prosecutorial bias.  That, however, is not the argument Petitioner raises here.

Considering Petitioner's double jeopardy claim as he has presented it, he has failed to show that the Michigan Court of Appeal's rejection of the claim is contrary to, or an

unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial

of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  June 5, 2020         /s/ Ray Kent
                             United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).